## In the Matter of the Voluntary Assignment of The Calumet State Bank.

## On Appeal of Melville C. Eames, Assignee, Appellant, v. Kate Becker, Appellee.

### Gen. No. 17,486.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS, § 136*—*requirements for filing claims arising subsequent to assignment.* Where a claim arises out of the operation or management of the estate, the statutory requirements as to filing claims against an insolvent arising prior to the assignment for the benefit of creditors are not controlling.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS, § 145*—*when County Court cannot set aside prior order of distribution.* County Court cannot set aside a previous order for distribution made without notice to a claimant against the estate of an insolvent unless the order was obtained by fraud.

Appeal from the County Court of Cook county; the Hon. LEWIS RINAKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Reversed and remanded. Opinion filed February 3, 1914.

CHARLES C. ARNOLD and JOSEPH P. EAMES, for appellant.

ALFRED E. BARR, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

On December 5, 1902, an order was entered in the County Court in this case ordering a distribution of seventeen per cent. of the amount of claims allowed, after payment of $3,000 to the attorney for the assignee, the order also permitting the assignee to retain $1,000 for his services. After compliance with the order about $150 was left in the hands of the assignee undistributed.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

On December 17, 1902, an order was entered allowing Kate Becker to file her petition, and a petition was filed January 27, 1903. This petition set forth that the petitioner had been the occupant of an apartment in a building which was in possession of the assignee as part of the estate of the assignor, and suffered an accident caused by the railing of a porch giving away, for which petitioner claimed damages to the extent of $10,000. To this petition an answer in the nature of a demurrer was filed by the assignee on January 27th.

On April 4, 1903, the assignee was ruled to file a report showing the condition of the estate, and it was ordered that the time for Kate Becker to file an amended petition be extended fifteen days. No amended petition, however, was filed.

On July 11, 1903, an order was entered denying without prejudice a motion of Kate Becker for leave to file a motion to vacate the order of December 5, 1902.

On July 15, 1904, the petitioner was given leave to make the assignee a party defendant to a suit in a proper court. No further order seems to have been entered in the case until April 1, 1909, when leave was given to Kate Becker to file her claim "against said estate." On October 29th of the same year an order was entered on her motion, the court finding that there was due her $2,000 on a judgment, with interest at five per cent. from July 11, 1908, to October 27, 1909, and costs of the Circuit Court amounting to $10, the total amount allowed her being $2,139.15.

On November 30, 1909, the assignee was ruled to file an account showing the condition of the estate, which was afterwards done.

On May 10, 1910, the appellee, Kate Becker, was given leave to file objections and exceptions to the petition filed by the assignee December 5, 1902, also to the report of the assignee filed April 9, 1903, and to the report filed December 8, 1909, the last being made conformably to the order of November 30, 1909.

On December 3, 1910, an order was entered upon the objections and exceptions, the court finding that sufficient funds of the estate came into the hands of the assignee to pay all costs and expenses of administration, and all preferred claims allowed, as well as the claim of the petitioner, Kate Becker; that after notice to the assignee of the existence of the claim of Kate Becker, and while sufficient estate funds were in his hands to pay all costs of administration and all preferred claims and the claim of Kate Becker as allowed, assignee procured the court to make the order of distribution of December 5, 1902, without notice to Kate Becker, and thereafter assignee made distribution of the funds of the estate in his hands, pursuant to said order, leaving the claim of Kate Becker unpaid; and it was ordered, adjudged and decreed that said order of distribution, in so far as it affected the rights of Kate Becker in the matter of payment of her claim as allowed, be vacated and set aside; that the exceptions taken by Kate Becker to assignee's reports of April 9, 1903 and December 18, 1909, be sustained, and that the assignee pay to Kate Becker out of the funds which had theretofore come into his hands, as assignee, the amount of her claim as allowed.

Exception was taken by the assignee to this order, and thereafter an appeal perfected to this court.

It has been held that the order was a final one and properly the subject of an appeal. *Becker v. Eames,* 257 Ill. 389.

The record discloses the fact that on the 20th of August, 1902, the assignee, appellant, Eames, received from the master in chancery a deed in a foreclosure suit against the property, part of which was occupied by the appellee as tenant, under a certificate of sale which had been assigned by the Royal Trust Company to Eames, assignee. It appears that the estate of the Calumet State Bank, the insolvent, had a five-sixths interest, and the Lemont State Bank a one-sixth interest in the property. During the period in

which Eames so held it and was collecting rents, on July 21, 1902, the appellee was injured by falling from the back porch of the building.

On the 23rd of October, 1902, the assignee, together with the receiver of the Lemont State Bank, petitioned the County Court for leave to sell the property, and it was ordered sold. The money was received by the assignee about November 21, 1902.

Mr. Errant, at one time attorney for appellee, testified that he was called into the matter in August, 1902, about a month after the accident; that he interviewed Mr. Arnold, one of the attorneys for the assignee, about the claim several times during the months of September, October and November of that year; that Arnold told him during one of these interviews in November that he did not think there was any liability; that there was no money on hand to speak of at that time, but that this property was there; that the assignee was trying to sell it, and that as soon as it was sold there would be some money on hand and that he would then take up the question of settling; that the witness asked Arnold whether he should file a claim or petition, and that Arnold said that would not be necessary as the witness would be kept posted with reference to things as they occurred and when it was necessary witness would be given plenty of notice, but as the property was still unsold and as there was no money on hand action was unnecessary, although he did not want anything done that would perhaps interfere with the sale of the property.

Joseph P. Eames, the son of Melville C. Eames, who was at that time associated with Mr. Arnold as attorney for the appellee, testified that he was present at all of the interviews between Errant and Arnold; that Arnold told Errant that he had heard something of the case through the witness and the assignee; that he did not see how there was any liability; that there was some conversation about the law of the case and the exact facts; that Mr. Arnold did not say to Mr.

Errant, "We haven't any money to speak of now. We are trying to dispose of the South Englewood property and as soon as we sell the property, we can take up the matter of settlement"; that Errant never asked Arnold or the witness whether he should file a claim, and that neither Arnold nor himself ever said that they did not want anything done that would interfere with the sale of the property by filing the claim; that the witness and Arnold interviewed the judge of the County Court in his chambers between November 21 and December 4, 1902, stating that there was money on hand sufficient to declare a dividend; that it had just been received on the sale of the property; that Errant had called upon Arnold with reference to Mrs. Becker's claim, and that neither the witness nor Arnold believed that there was any liability on the part of the assignee; that they were asked if a claim had been filed and said that none had been; that they were then informed by the judge that he saw no reason why dividends should not be declared without anything further being done; that the dividend declared in December, 1902, amounted to about $13,000, there having been three dividends prior thereto; that the assignee spoke to the witness about the claim soon after he heard of the existence of it at their home, and that witness informed the assignee of the visits of Errant to his office; that no notice was given to Errant nor to Mrs. Becker that the attorneys for the assignee would ask for an order of distribution; that the judge said that no notice was necessary.

Mr. Arnold was also a witness for the assignee. He admitted having had interviews with Mr. Errant prior to December 5, 1902; denied that he had ever said that he wished to delay matters in order to consult with the assignee; affirmed that he at all times told Errant that the claim would not be considered as a claim against the estate; that he did not tell him that as soon as money was obtained from the sale of the building he would take up the question of settlement; that Errant

never asked him if he should file any claim in the matter, and that witness did not tell Errant that he would keep him posted, and that he need not file any claim; and that nothing was said by witness to Errant to induce the latter not to file a claim, or not to take such action with reference to it as seemed wise. He confirmed the testimony of Eames, his associate, with reference to the conversation with the judge in chambers as to the propriety of a further distribution of the assets of the estate, and as to what was said respecting the interviews had with Errant, the fact that no claim had been filed, etc. The witness further stated that no sort of suggestion was ever made to Errant that there was any thought of paying the claim or that there was any desire to prevent prosecution.

We agree with the appellee that the claim arose out of the operation or management of the estate, and that the statutory requirements as to filing claims against an insolvent arising prior to the assignment for the benefit of creditors are not controlling.

The order of October 29, 1909, dealt with the claim as though it were one that existed as against the assignor at the time of the assignment, and which should share in the dividends that might be declared to the creditors of the assignor. It was not in this order allowed as a claim against the assignee, to be paid by him as part of the expenses of administration. The order appealed from directs the assignee in terms to "pay out of the funds which have heretofore come into his hands as assignee to Kate Becker the amount of her claim as allowed." The order in terms also vacates the order of distribution of December 5, 1902. This the court could not do without an abuse of power unless the order was obtained by fraud. The order appealed from does not find nor does the record disclose that any fraud was practiced upon the court. On the other hand, it appears that the attorneys representing the assignee disclosed to the judge of the court in chambers all of the facts with reference to the ex-

istence of the claim of the petitioner, and were told that it was not necessary that a notice be served upon the claimant or her attorney.

It is to be noted that the order was not entered until after the statute of limitations had taken away from the assignee the power of obtaining a recovery from creditors of the dividend paid in 1902, or so much as would satisfy the claim of Mrs. Becker. *Becker v. Eames, supra.* It is true that prior to December 5, 1902, the assignee knew of the existence of the claim. It is also true that the existence of the claim had been made known to the judge who entered the order of distribution.

It follows that the order appealed from is erroneous. It will therefore be reversed and the cause remanded for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*